IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| SIERRA CLUB, ) | |
| PHYSICIANS FOR SOCIAL ) | |
| RESPONSIBILITY, and ) | |
| GEORGIA FORESTWATCH, ) | |
| ) | CIVIL ACTION FILE NO. |
| Plaintiffs, ) | 3:02-CV-151-JTC |
| ) | |
| v. ) | |
| ) | |
| GEORGIA POWER COMPANY, ) | |
| ) | |
| Defendant. ) | |

## CONSENT DECREE

This matter is before the Court on the Parties' Joint Motion for Entry of Consent Decree.

WHEREAS, on December 30, 2002, Sierra Club, Physicians for Social Responsibility, and Georgia Forestwatch (collectively "Plaintiffs"), filed a citizen suit, pursuant to Section 304 of the Clean Air Act, 42 U.S.C. § 7604, against Georgia Power Company ("Georgia Power") alleging Georgia Power had violated its Clean Air Act Title V Operating Permit for Plant Wansley (the "Permit");[1]

---

[1] On February 14, 2007, Plaintiffs filed a Suggestion of Death noting that Plaintiff Eileen Lange had passed away.

WHEREAS, Plaintiffs' Complaint alleged five (5) Counts—Counts I & II pertaining to the two-coal fired units (Units 1 & 2), and Counts III, IV, & V pertaining to two natural-gas-fired combined-cycle units (Units 6 & 7);

WHEREAS, on June 19, 2003 this Court granted Georgia Power's Motion to Dismiss Count V, which alleged violations of the Maximum Achievable Control Technology review requirements of Section 112(g) of the Clean Air Act, 42 U.S.C. § 7412(g) at the combined-cycle units (Units 6 & 7);

WHEREAS, on June 10, 2004, this Court granted Georgia Power's Motion for Summary Judgment on Count IV, which alleged Georgia Power failed to obtain appropriate emissions reductions (called "offsets") of nitrogen oxides for the combined-cycle units (Units 6 & 7);

WHEREAS, on December 14, 2004, this Court granted Georgia Power's Motion for Summary Judgment as to ten (10) of the twelve (12) events under Count III, which alleged violations of an operational restriction at the combined-cycle units (Units 6 & 7), and granted Plaintiffs' Motion for Summary Judgment as to two (2) of the twelve (12) events under Count III;

WHEREAS, on January 11, 2007, this Court granted Georgia Power's Motion for Summary Judgment on Counts I and II, which alleged violations of the applicable opacity limits at the coal-fired units (Units 1 & 2);

WHEREAS, in its January 11, 2007 Order, this Court encouraged the Parties to confer and jointly submit a proposed remedy for the two violations of the Permit under Count III;

WHEREAS, the Parties agree that entry of this Consent Decree without further litigation and without the costly process of appeal is the most appropriate means of resolving this matter;

WHEREAS, the Parties have agreed, and the Court by entering this Consent Decree finds that: this Consent Decree has been negotiated in good faith and at arms length; this settlement is fair, reasonable, in the best interest of the Parties and in the public interest; and this settlement is consistent with the goals of the Clean Air Act.

NOW, THEREFORE, without any admission of fact or law, and without any admission by Georgia Power that any of the violations alleged by Plaintiffs occurred, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action, the subject matter herein, and the Parties consenting hereto, pursuant to 28 U.S.C. § 1331 and Section 304 of the Clean Air Act, 42 U.S.C. § 7604(a). Venue is proper under Section 304(c) of the Clean Air Act, 42 U.S.C. § 7604(c) and under 28 U.S.C. § 1391(b) and (c).

2.    Plaintiffs met the notification requirements of Section 304(b)(1)(A) of the Clean Air Act, 42 U.S.C. § 7604(b)(1)(A).

## II. APPLICABILITY

3.    Upon entry, the provisions of this Consent Decree shall apply to and be binding upon Plaintiffs and Georgia Power and shall apply to and inure to the benefit of both Parties' successors and assigns and to Georgia Power's officers, employees, and agents, and to their successors and assigns, solely in their capacities as such.

## III. DEFINITIONS

4.    "Clean Air Act" means the federal Clean Air Act, 42 U.S.C. §§7401-7671q, and it's implementing regulations.

5.    "Complaint" means the Complaint filed in this Court by Plaintiffs against Georgia Power on December 30, 2002, in this Civil Action 3:02-CV-151-JTC.

6.    "Consent Decree" means this Consent Decree.

7.    "Counsel for Plaintiffs" means Robert Ukeiley of the Law Office of Robert Ukeiley, 435R Chestnut Street, Ste. 1, Berea, KY 40403.

8.    "Court" or "this Court" means the United States District Court for the Northern District of Georgia.

9. "EPA" means the United States Environmental Protection Agency.

10. "Georgia Power" means the Georgia Power Company headquartered at 241 Ralph McGill Boulevard NE, Atlanta, Georgia 30308.

11. "Georgia Interfaith Power & Light" or "GIPL" means the non-profit project of the non-profit corporation called the Southern Alliance for Clean Energy, Incorporated founded in 2003 and currently headquartered at 427 Moreland Avenue, Suite 100, Atlanta, GA 30307 or any successor entity.

12. "Solar Fund" means the Georgia Interfaith Solar Fund, created as a partnership between the Parties.

13. "Steering Committee" means the governing body of Georgia Interfaith Power & Light.

14. "Parties" means Georgia Power Company, Sierra Club, Physicians for Social Responsibility, and Georgia Forestwatch.

15. "Plaintiffs" means Sierra Club, Physicians for Social Responsibility, and Georgia Forestwatch.

16. "Units 1 & 2" means the two super critical coal-fired electric generating units at Plant Wansley, Georgia Highway 5, Roopville, Heard County, Georgia 30170.

17.     "Units 6 & 7" means the two natural-gas-fired, combined-cycle electric generating units at Plant Wansley, Georgia Highway 5, Roopville, Heard County, Georgia 30170, also referred to as Blocks 6 & 7, and further identified in the Complaint.

## IV.  NOTICE TO EPA & TO ATTORNEY GENERAL

18.     Pursuant to Section 304(c)(3) of the Clean Air Act, 42 U.S.C. § 7604(c)(3), the Parties have provided a copy of this Consent Decree to the Attorney General and to the EPA Administrator.  This Court will not enter the Consent Decree before May 19, 2007, which is fifty (50) days after the Consent Decree was mailed to the Attorney General and the EPA Administrator.

## V.  BENEFICIAL ENVIRONMENTAL PROJECT

19.     Georgia Power and Plaintiffs agree to jointly create the Georgia Interfaith Solar Fund ("Solar Fund"), which will be a revolving capital loan fund intended to facilitate installation of solar panels and solar hot water heaters (so long as the latter replace existing electric hot water heaters) at non-profit faith institutions in Georgia that are located within an area designated by EPA as nonattainment under one or more of the National Ambient Air Quality Standards.

20.     Within sixty (60) days of the Effective Date of this Decree, Georgia Power agrees to provide start-up funding for the Solar Fund by sending a check for

sixty thousand dollars ($60,000.00) to Georgia Interfaith Power & Light ("GIPL"). GIPL will deposit this $60,000.00 in the Solar Fund.

21.    The Parties agree that GIPL will be the administrator of the Solar Fund and will have administrative control and responsibility for the Solar Fund. As administrator of the Solar Fund, GIPL will have the right to withdraw and deposit money to effect the purpose of the Solar Fund as described herein.

22.    GIPL is a non-profit project founded in 2003 to engage communities of faith in energy conservation, energy efficiency, renewable energy and related sustainable practices.

23.    GIPL will administer the Solar Fund subject to the following limitations and guidance:

    a.    GIPL's Steering Committee, as well as any outside experts chosen by the Steering Committee, will review loan applications and make all final decisions concerning the disbursement and collection of the assets of the Solar Fund.

    b.    GIPL will advertise the availability of loan money from the Solar Fund and will consider applications twice a year provided there are sufficient funds in the Solar Fund to make additional loans at that point.

    c.    All loans will be awarded competitively and GIPL will work out the details of the application procedures, loan documents, recourse and default procedures to the satisfaction of the Steering Committee and its outside experts before the first loan is made.

    d.    Loans will be interest free and will be paid back over a ten (10) year period in installment payments.

    e.    GIPL will charge no fees for administering the Solar Fund but may seek grant funds for such purposes.

24.    Because the fund will facilitate and enable increased solar generation and because any excess energy may be sold to electric utilities and put directly onto the electric grid, it will help offset the need for traditional energy sources.

25.    Under no circumstances should this Consent Decree be interpreted as an agreement for Georgia Power to purchase electricity from anyone, nor should it be interpreted to restrict Georgia Power's freedom to purchase power however it so chooses.

26.    Georgia Power's sole obligation regarding the Solar Fund is to provide the start-up funding described in Paragraph 20.

27.    The Parties believe this Beneficial Environmental Project will help promote energy efficiency and renewable energy, and while not a "Supplemental

Environmental Project" under the Clean Air Act, it is the type of project EPA encourages.  See Memorandum from Brian McLean, Director, Office of Atmospheric Programs, to Regional Air Division Directors, <u>A Toolkit for States: Using Supplemental Environmental Projects (SEPs) To Promote Energy Efficiency (EE) and Renewable Energy (RE)</u>, (Jan. 27, 2005).

## VII.  DISCOVERY COSTS

28.     Within sixty (60) days of the Effective Date of this Decree, Georgia Power agrees to pay to "Counsel for Plaintiffs" ten thousand dollars ($10,000.00) to help defray copying and transcript costs, which Plaintiffs incurred over the course of this action.  To fulfill this obligation, Georgia Power will mail a $10,000.00 check, made out to Robert Ukeiley, P.S.C., to Counsel for Plaintiffs.

## VIII.  MOTION TO DISMISS WITH PREJUDICE

29.     Within fifteen (15) days of Georgia Power's fulfillment of Paragraphs 20 and 28 above, Plaintiffs will file with this Court a Motion to Dismiss with Prejudice all claims against Georgia Power.

## IX. NOTICES

30.     Unless otherwise provided herein, whenever notifications or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

For the Plaintiffs:

Robert Ukeiley
Law Office of Robert Ukeiley
435R Chestnut Street, Ste. 1
Berea, KY 40403
(859) 986-5402

For Georgia Power:

James H. Miller III
Senior Vice President and General Counsel
241 Ralph McGill Boulevard NE, BIN 10240
Atlanta, Georgia 30308

and

Charles H. Huling
Vice President of Environmental Affairs
241 Ralph McGill Boulevard NE, BIN 10221
Atlanta, Georgia 30308

and

Margaret Claiborne Campbell
Troutman Sanders LLP
600 Peachtree Street, Suite 5200
Atlanta, GA 30308
(404) 885-3000

31. All notifications or communications made pursuant to this Section shall be sent either by: (a) overnight mail or delivery service; (b) certified or registered mail, return receipt requested; or (c) electronic transmission, unless the recipient is not able to review the transmission in electronic form. All notifications or communications (a) sent by overnight, certified or registered mail shall be deemed submitted on the date they are postmarked, or (b) sent by overnight delivery service shall be deemed submitted on the date they are delivered to the delivery service. All notifications or communications made by electronic means shall be electronically signed and certified, and shall be deemed submitted on the date that such transmissions are sent, unless the recipient shows it did not receive such transmission.

32. Any Party may change either the notice recipient or the address for providing notices to it by serving the other Party with a notice setting forth such new notice recipient or address.

## X. THIRD-PARTY BENEFICIARIES

33. No person other than the Parties to this Consent Decree and their respective heirs, successors and assigns are intended to be a beneficiary of this Consent Decree. The Parties do not intend to create third-party beneficiary rights in anyone not a party to this Consent Decree.

## XI.  RIGHT TO APPEAL AND ATTORNEY FEES

34.   The Parties agree to relinquish any and all rights to appeal the prior orders of this Court related to Counts I through V, and the Parties agree to pay their own fees and costs (except for those expressly stated in Part 28) associated with all aspects of this action, including any future fees and costs.

## XII.  RELEASE BY PLAINTIFFS

35.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final resolution between Plaintiffs and Georgia Power of all counts of the Complaint.  Except for claims which may arise under the provisions of this Consent Decree, Plaintiffs hereby release, discharge, and covenant not to assert any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity which they may have had, or may now or hereafter have, against Georgia Power based upon matters which have been asserted in the Complaint.  This release solely relates to Plant Wansley, solely relates to activities that occurred prior to entry of this Consent Decree and solely relates to the causes of action set out in Plaintiffs' complaint.

### XIII.  USE OF CONSENT DECREE

36.     This Consent Decree shall not constitute an admission or evidence of any fact, wrongdoing, misconduct or liability on the part of Georgia Power, its officers, agents, employees or any person affiliated with it.

### XIV.  EFFECTIVE DATE

37.     The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

### XV.  RETENTION AND TERMINATION OF JURISDICTION

38.     Until the Court's jurisdiction is terminated, the Court shall retain jurisdiction to enforce compliance with the terms and conditions of this Consent Decree and to take any action necessary or appropriate for its interpretation, construction, execution, modification, or adjudication of disputes.

39.     The Court's jurisdiction over this Consent Decree shall terminate upon entry of the Consent Decree and the Court's Order granting Plaintiffs' Motion to Dismiss With Prejudice.

### XVI.  MUTUAL DRAFTING

40.     It is hereby expressly understood and agreed that this Consent Decree was jointly drafted by the Parties.  Accordingly, the Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the

drafting party shall be inapplicable in any dispute concerning the terms, meaning or interpretation of this Consent Decree.

## XVII.  ENTIRE AGREEMENT

41.    This Consent Decree constitutes the entire agreement and understanding between Georgia Power and Plaintiffs with respect to the issues addressed herein and cannot be modified or amended except in writing signed by the Parties.  Any prior agreements, promises, negotiations or representations, either oral or written, relating to the subject matter of this Consent Decree and not expressly set forth in this Consent Decree or in any instruments or agreements executed in connection herewith are of no force or effect, except as expressly set forth herein.

SO ORDERED, THIS ____ DAY OF _____, 2007

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE

**FOR GEORGIA POWER COMPANY**

s/ <u>Margaret Claiborne Campbell</u>
MARGARET CLAIBORNE CAMPBELL
DANIEL S. REINHARDT

14

**FOR PLAINTIFFS, SIERRA CLUB, PHYSICIANS FOR SOCIAL RESPONSIBILITY, AND GEORGIA FORESTWATCH**

s/ Robert Ukeiley
 ROBERT UKEILEY